IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESSICA CROCKETT,

    Plaintiff,

v.                                                  CIV 17-0651 KBM/JHR

FARMERS INSURANCE COMPANY OF ARIZONA
AND YET TO BE IDENTIFIED EMPLOYEES AND/OR
AGENTS OF FARMERS GENERAL INSURANCE COMPANY,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Farmers Insurance Company of Arizona's ("Defendant's") Motion for Judgment on the Pleadings (*Doc. 3*), filed June 16, 2017. Pursuant to 28 U.S.C. § 636(c), the parties have consented to me serving as the presiding judge and entering final judgment. *Docs. 6, 7, 8*. Having considered the pleadings and briefs of counsel and otherwise being fully advised, the Court finds that Defendant's Motion for Judgment on the Pleadings is well-taken in part and will be granted in part. More particularly, Defendant is entitled to judgment on the pleadings as a matter of law, but the Court will deny its request for sanctions.

### I.    BACKGROUND

On December 14, 2015, Defendant Farmers Insurance Company of Arizona ("Defendant") issued Policy No. 19414-35-31 ("the Policy") to Plaintiff and her husband, William Crockett, insuring two of their vehicles. *See Doc. 1-2*,

Ex. A. Both Plaintiff and Mr. Crockett were named insureds on the Policy. *See id*. The vehicles insured on the Policy were a 2004 Lincoln Aviator ("the Lincoln") and a 2008 Dodge Caliber ("the Dodge"). *See id.* The Policy provided comprehensive liability coverage for both vehicles, UM/UIM[1] bodily injury and UM/UIM property damage coverage for the Lincoln, and only UM/UIM property damage coverage for the Dodge. *See id.* Mr. Crockett rejected UM/UIM bodily injury coverage on the Dodge. *See id.* at 13-14, 17-18.

As part of the Policy, Defendant presented Mr. Crockett with its "Auto Insurance Uninsured and Underinsured Motorist Bodily Injury and Uninsured and Underinsured Motorist Property Damage Selection of Limits" form ("Selection Form") on December 14, 2015, the same day the Policy was delivered to Plaintiff and Mr. Crockett. *See Doc. 1-2*, Ex. B, at 17-18. Mr. Crockett confirmed his UM/UIM selections by initialing them on the Selection Form. *See id*. at 18. Specifically, he initialed each of the following selections: (1) $25,000 per person/$50,000 per occurrence in UM/UIM bodily injury coverage on the Lincoln; (2) $10,000 per occurrence in UM/UIM property damage coverage on the Lincoln; (3) a rejection of UM/UIM bodily injury coverage in its entirety on the Dodge; and (4) $10,000 per occurrence in UM/UIM property damage coverage on the Dodge. *Id.* The Selection Form also enumerated the premium costs applicable to each available level of coverage for each vehicle. *Id.* at 19. By signing the selection form, Mr. Crockett acknowledged that he "had Uninsured and Underinsured Motorist Bodily Injury [and] . . . Property Damage Coverage

---

[1] The Court uses the acronym "UM/UIM" throughout to refer to Uninsured Motorist and Underinsured Motorist insurance coverage, which is governed by N.M. Stat. Ann. § 66-5-301 (1978).

2

explained to [him]" and that he had "reviewed each of the available coverage limits and the premiums associated with each coverage option." *Id.* Additionally, he acknowledged that the selected coverage limits would apply unless he contacted his agent to change his selections. *Id.*

Plaintiff now alleges that Mr. Crockett's waiver of UIM coverage was executed without her authority. *Doc. 1-2* at 2, ¶ 5. In her Complaint, she references the attached Affidavit of William Richard Crockett III (Mr. Crockett) in which he states that he had no authority from his wife to waive or reduce UM/UIM benefits. *See id.* Additionally, Mr. Crockett states in his affidavit that Defendant's agent did not explain to him the significance of his rejections of UM/UIM coverage. *Id.* at 16, ¶ 3.

## II. LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings will be granted if the moving party clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *rev'd on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013). A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is considered under the same standard of review applicable to a motion made under Rule 12(b)(6). *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012). Accordingly, a court reviewing a motion for judgment on the pleadings

must accept "all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." *Park Univ. Enters.*, 442 F.3d at 1244. Although a court must assume the truth of the properly alleged, or "well-pleaded," facts in the complaint, it has no obligation to accept conclusory allegations as true. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). Claims dismissed pursuant to a Rule 12(c) motion are dismissed with prejudice. *See Pena v. Greffett*, 110 F. Supp. 3d 1103 (D.N.M. 2015).

### III. ANALYSIS

#### A. Motion for Judgment on the Pleadings

First, Plaintiff maintains that Defendant's Motion for Judgment on the Pleadings should be converted to one for summary judgment, given that Defendant "refers to facts outside of the pleadings." *Doc. 10* at 1. Pursuant to Federal Rule of Civil Procedure 12(d), when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Alternatively, the court has broad discretion to refuse to accept materials outside the pleadings and to resolve the motion without considering them. *Lowe v. Town of Fairland, Okla.*, 143 F.3d 1378, 1381 (10th Cir. 1998). On the other hand, documents referenced in a dispositive motion are considered "part of the pleadings" if the plaintiff referred to them in her complaint and they are "central to her claim." *Venture Assoc. Corp v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("Exhibits

4

attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion to dismiss.").

Here, each of the documents referenced in Defendant's motion was both attached to Plaintiff's Complaint and is central to her claims. *Compare Doc. 3 with Doc. 1-2.* Accordingly, the Court need not convert the subject motion to one for summary judgment or disregard Defendant's references to these documents. Instead, the Court will consider the substance of Defendant's motion as well as the referenced documents under the Rule 12(c) standard.

Defendant makes the following contentions: (1) its Selection Form met the requirements under New Mexico law for the rejection of UM/UIM coverage; (2) a wife is bound under New Mexico law by her husband's waiver of UM/UIM coverage; (3) Plaintiff has failed to state a claim upon which relief may be granted; (4) Plaintiff's Complaint is "inapposite with public policy"; and (5) Plaintiff's claims are legally frivolous and warrant sanctions under either the New Mexico Declaratory Judgment Act or under Federal Rule of Civil Procedure 11. *See Doc. 3.* Plaintiff, in contrast, maintains that judgment on the pleadings is improper, because she has raised issues of fact as to whether Mr. Crockett had the authority to reject UM/UIM coverage benefits on Plaintiff's behalf and whether Defendant failed to properly inform Mr. Crockett as to his rejection of UM/UIM coverage. *See Doc. 10.*

Under New Mexico law, a rejection of UM/UIM coverage equal to liability limits in an automobile insurance policy must be made in writing and incorporated into the insurance policy in a manner that affords the insured a fair opportunity to

5

reconsider his decision to reject the coverage. *Jordan v. Allstate Ins. Co.*, 245 P.2d 1214, 1217 (N.M. 2010). In other words, when an insured selects UM/UIM coverage of less than his liability limits, as Mr. Crockett did here, that selection must be made on a written form and incorporated into the policy in order to be valid. *See id.* Further, the insurer must enumerate for the insured the premium charges that correspond to each available level of UM/UIM coverage so that the insured can make an informed decision regarding the rejection of the full amount of coverage to which he is entitled. *Soseeah v. Sentry Ins.*, 808 F.3d 800, 804 (10th Cir. 2015); *Jordan*, 245 P.3d at 1217. If the insurer does not obtain a valid rejection of UM/UIM benefits, the policy will be reformed to provide UM/UIM coverage equal to her liability limits. *See Jordan*, 245 P.2d at 1217.

Here, Plaintiff attached the Selection Form used by Defendant and signed by Mr. Crockett as an exhibit to her Complaint. *See Doc. 1-2* at 18-19. In its motion, Defendant maintains that this Selection Form complied with the requirements under New Mexico law. Plaintiff does not suggest otherwise. Yet, despite the use of this otherwise-compliant Selection Form, she insists that Mr. Crockett lacked the authority to reject UM/UIM coverage on her behalf and that Defendant failed to fully inform Mr. Crockett as to his rejection of UM/UIM coverage. *Doc. 10* at 4.

First, relying upon cases from the Indiana Court of Appeals and the Oklahoma Supreme Court, Plaintiff insists that a written rejection of UM/UIM coverage signed by one insured does not serve as a rejection of such coverage on behalf of another named insured, so long as the insurance policy does not

6

specifically provide for one insured's authority to act on behalf of the other. *Id.* at 8-9 (citing *State Farm Fire & Cas. Co. v. Garrett*, 783 N.E.2d 329 (Ind. App. 2003) and *Plaster v. State Farm Mut. Auto. Ins. Co.*, 791 P.2d 813 (Okla. 1980)). Plaintiff contends that because the forms signed by Mr. Crockett made no mention of any authority to reject coverage on behalf of his spouse, they did not operate to relinquish Plaintiff's statutory right to UM/UIM coverage equal to her vehicle's liability coverage limit. *Id.* at 9-10. But the courts which reached the decisions in *Garrett* and *Plaster* were not applying New Mexico law, and, critically, New Mexico courts have resolved this issue differently.

First, in *Loya v. State Farm Mut. Ins. Co.*, 888 P.2d 447 (N.M. 1994), the New Mexico Supreme Court held that "[w]hen a married couple contracts for insurance coverage for a family, there is a presumption that the coverage applies with equal effect to both parties unless one of them is expressly excluded from coverage. Each [spouse] is considered to be a purchaser of the contract." *Id.* at 449. Given this presumption, the court determined that it would be improper for an insurance company to exclude coverage for a spouse who did not actually sign the insurance contract but who was a "clear beneficiary thereof." *Id.*

Three years later, in *Vigil v. Rio Grande Insurance of Santa Fe*, 950 P.2d 297 (N.M. Ct. App. 1997), the New Mexico Court of Appeals considered the effect of one spouse's rejection of UM/UIM coverage on the other spouse. There, the husband requested a quote for only liability automobile insurance, and upon receiving that quote, sent his wife to the insurance agency to purchase insurance. *Id.* at 298. The wife took along enough cash to pay the liability

7

insurance premium as quoted and, while at the office, rejected UM coverage by signing a form which provided that such coverage had been explained to her and that she fully understood that the couple's policy would not contain the coverage. *Id.* Additionally, the wife signed a Coverage Explanation form, which explained that she was receiving liability insurance only and that no UM coverage would be included. *Id.* The defendants mailed the plaintiffs a copy of their policy, along with a declarations page, which indicated that they were covered by liability insurance but that they had rejected UM coverage. *Id.* at 298. Over the next three years, the husband visited the insurance agency multiple times to change the couple's coverage under the policy, including the addition of various vehicles. *Id.* at 299. Each time, the agency mailed the plaintiffs a declarations page explaining that the couple had rejected UM coverage. *Id.*

When the wife was involved in an automobile accident with an uninsured motorist, the husband "did not believe that he had UM coverage." *Id.* Given his wife's injuries, however, he realized the importance of carrying such coverage. *Id.* The plaintiffs filed suit against their insurer and insurance agency for negligence, misrepresentation, fraud, violation of the insurance code, and a violation of the New Mexico Unfair Practices Act. *Id.* They maintained that the UM rejection was invalid because it was signed by the wife, rather than the husband, where the husband directed the wife to purchase insurance in accordance with his prior discussions with the insurance agency. *Id.* at 300. Like Plaintiff here, the plaintiffs in *Vigil* sought reformation of the insurance contract to include UM coverage. *Id.* at 299.

Ultimately, the New Mexico Court of Appeals concluded that the wife had actual authority from the husband to purchase liability insurance and to sign the insurance contract with the defendants. *Id.* at 300. As such, it determined that the husband was bound by the wife's actions in procuring the insurance and *in rejecting UM coverage*. *Id.* Citing *Loya*, the court explained that it would "be an unusual circumstance in which one spouse would not bind the other in dealing with an insurance agent regarding a family vehicle." *Id.*

While the plaintiffs in *Vigil* argued that the rejection of UM coverage was not knowing or intelligent because the insurance agent neglected to explain the significance of such coverage, the court concluded that "[n]othing in the applicable statute requires an insurer to make a purchaser aware of the importance of UM coverage before accepting a rejection of such coverage." *Id.* at 301. Instead, the court held that insurers are only required to "appropriately inform[]" insureds that they have rejected UM coverage, which the defendants had done through a clear form showing UM coverage was not included in the policy purchased. *Id.* at 300-01. Putting it another way, the court explained that "a purchaser must only be fully informed of the **fact** of rejection, rather than the **significance** of the rejection; an insurance agent has no duty to inform prospective purchasers of the ramifications of their decisions." *Id.* at 301 (citing *Parker v. E.I. Du Pont de Nemours & Co.*, 909 P.2d 1, 6 (N.M. Ct. App. 1995)). The court concluded that the plaintiffs had not raised a fact question as to whether the rejection of UM coverage was knowing and intelligent. *Id.* at 301.

Despite the similar fact pattern and legal issues in *Vigil*, Plaintiff nevertheless attempts to distinguish it, insisting that particular facts there, not present in the instant case, led the court to its conclusion. For instance, Plaintiff notes that the husband in *Vigil* had previously requested a quote for only liability coverage, that he had authorized his wife to purchase only liability coverage, that the wife arrived at the insurance agency with only enough cash for liability coverage, that the husband had himself changed coverage on multiple occasions, and, finally, that the husband did not believe that he had UM coverage at the time of the subject accident. *Doc. 10* at 7-8. In contrast, Plaintiff explains:

> (1) Mr. Crockett did not request a quote for liability coverage only; (2) Plaintiff did not "specifically authorize" her husband to only purchase liability insurance, nor did she authorize him to reject UM/UIM coverage for one vehicle, which was her vehicle . . . ; (3) In fact, she assumed that the UM/UIM coverage limit in the same amount as the liability coverage they had purchased . . . ; and (4) both believed they had the maximum limits of UM/UIM coverage that they were entitled to by law.

*Doc. 10* at 8. Given these distinctions, she suggests that the "validity of the rejection of UM/UIM coverage . . . should be limited, at the very least, to the named insured who signed the waiver." *Id.*

Additionally, Plaintiff contends that under New Mexico law "an insurance policy proceeds with the primary goal of 'ascertain[ing] the intentions of the contracting parties with respect to the challenged terms at the time they executed the contract.'" *Id.* at 6 (modification in original) (citing *Strata Prod. Co. v. Mercury Exploration Co.*, 916 P.2d 822 (N.M. 1996)). She submits that interpretation of insurance contracts is not restricted to the language found within the four corners

of the policy and, rather, that courts may also consider extrinsic evidence in determining whether an ambiguity exists. *Id.* at 6-7. She relies upon her own extrinsic evidence -- the affidavit of Mr. Crockett -- wherein he states that he did not have Plaintiff's authority to reduce the maximum UM/UIM benefits available to the couple and that the insurance agent did not fully explain the significance of his rejection of UM/UIM coverage. *See Doc. 1-2* at 16. Similarly, in her response brief, Plaintiff contends that Defendant's agent did not explain the "ramifications of a rejection of UM/UIM coverage nor did Mr. Crockett even understand what he was signing. Mr. Crockett was not properly nor fully informed that he was rejecting the coverage." *Doc. 10* at 7. Plaintiff argues that because Mr. Crockett did not "know what he was giving up," she could not have given him the authority to give "it" up. *Id.* at 10. It follows, she suggests, that Mr. Crockett was without the authority to reject UM/UIM coverage on her behalf. *Id.*

Even taking as true Plaintiff's allegation that Mr. Crockett's insurance agent did not convey to him the meaning or ramifications of a UM/UIM rejection, Plaintiff has nevertheless failed to state a claim that the rejection of UM/UIM coverage was not knowingly and intelligently made. Once again, "a purchaser must only be fully informed of the *fact* of rejection, rather than the *significance* of the rejection; an insurance agent has no duty to inform prospective purchasers of the ramifications of their decisions." *Vigil*, 950 P.2d at 301. Here, both Mr. Crockett and Plaintiff were properly informed of the fact that they had rejected UM/UIM coverage by virtue of Defendant's incorporation of that rejection into the plain language of the policy. *See Doc. 1-2* at 13 (Declarations Page, indicating

11

that UM/UIM bodily injury coverage had been "rejected"); s*ee Curry v. Great N.W. Ins. Co.*, 320 P.3d 482, 485 (N.M. App. 2013) (noting that a written rejection of UM coverage incorporated as a part of the delivered policy "provides affirmative evidence that the rejection of the UM coverage was 'knowingly and intelligently' made"); *Jordan*, 245 P.3d at 1220 (incorporating the written rejection of UM/UIM coverage into the policy will "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived"). By incorporating Mr. Crockett's rejection of UM/UIM coverage into the policy, Defendant alerted Mr. Crockett and Plaintiff of their rejection of UM/UIM coverage and put them on notice that they would need to modify their policy if they wanted additional UM/UIM coverage.

Further, in the Court's view, any factual distinctions between *Vigil* and the present case are ultimately distinctions without a difference. That is, even given the factual nuances enumerated by Plaintiff -- for example, that Plaintiff did not request a quote from Defendant for liability-only insurance and that both Plaintiff and Mr. Crockett believed they had the maximum limits of UM/UIM -- *Vigil* still controls. Under the Court's reading of *Vigil*, the waiver of UM/UIM coverage by one spouse applies with equal force to the other spouse even if the purchasing spouse was not specifically authorized to reject UM/UIM coverage. In essence, a spouse's authority to reject UM/UIM coverage on the other spouse's behalf is implicit in his authority to purchase automobile insurance. Plaintiff has not alleged that Mr. Crockett lacked the authority to procure automobile insurance on her behalf. Indeed, she seeks benefits under a reformed version of the policy that he

procured. Additionally, Plaintiff has not cited any case where a New Mexico court has found that one spouse's rejection of UM/UIM coverage did not bind the other; nor has she pointed to any factual distinctions that would cause the Court to reach a different conclusion from the one reached in *Vigil*. Thus, taking every fact alleged by Plaintiff in her Complaint as true and granting all inferences in her favor, Mr. Crockett's clear, written rejection of UM/UIM coverage in an amount equal to the couple's liability limits, *see Doc. 1-2*, at 13-14, 18-19, applies with equal force to Plaintiff. Plaintiff having failed to establish that a material issue of fact remains, Defendants are entitled to judgment on the pleadings.

**B. Requests for Sanctions**

Defendant's motion asks the Court to impose sanctions against Plaintiff or her counsel, awarding Defendant double their reasonable attorneys' fees, costs, and expenses in defending the allegations in Plaintiff's Complaint. Plaintiff, in turn, makes a cross-motion for sanctions, arguing that the Court should sanction *Defendant* "for its legally frivolous filing under Rule 11." *Doc. 10* at 13. The Court has determined herein that Defendant is entitled to judgment on the pleadings and that Plaintiff's claims fail as a matter of law. It follows that Plaintiff's cross-motion for sanctions is without merit. This does not, however, resolve the issue of whether sanctions should be awarded against Plaintiff or her counsel. After all, the mere failure to prevail on a particular pleading or motion does not, of itself, warrant sanctions. *See Altran Corp. v. Ford Motor Co.*, 502 U.S. 939 (1991).

Defendant specifically requests sanctions under either the Declaratory Judgment Act, which Plaintiff invokes in Count VI of her Complaint, or Federal

13

Rule of Civil Procedure 11. *See Doc. 3* at 13. The Declaratory Judgment Act provides in pertinent part:

> Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. . . . the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

N.M. Stat Ann. § 44-6-9 (1978). While the language of § 44-6-9 contemplates the award of "further relief" following the adjudication of rights by declaratory judgment, Defendant does not reference any case in which a court has relied upon this provision to award sanctions against the party who sought the declaratory judgment in the first place.

Additionally, the availability of sanctions under Federal Rule of Civil Procedure 11 is not necessarily a given, as Plaintiff's Complaint was filed in state court where the rule does not apply. Yet, Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper" an attorney certifies that the allegations are not made for any improper purpose, the claims and legal contentions are warranted by existing law or a good faith argument for extending the law, and the factual contentions have evidentiary support. Fed. R. Civ. P. 11(b). The advisory committee note to the 1993 amendments explains that "if after a notice of removal is filed, a party urges in federal court the allegations of a pleading filed in state court . . . , it would be viewed as presenting – and hence certifying to the district court under Rule 11 – those allegations." Fed. R. Civ. P. 11(b) & (c), advisory committee note to 1993 amendment. Having advocated the merits of the subject claims in Plaintiff's Response to Defendant's Motion for

Judgment on the Pleadings, Plaintiff and her counsel brought themselves within the reach of Rule 11. Even so, Defendant did not follow the directive in Rule 11(c)(2) that a "motion for sanctions must be made separately from any other motion." Fed. R. Civ. P. 11(c)(2). Further, Defendant has not demonstrated compliance with Rule 11(c)(2)'s "safe harbor" provision, which requires a party seeking sanctions to first serve its motion for sanctions on the opposing party, allowing her 21 days within which to withdraw or appropriately correct the challenged claim. *See* Fed. R. Civ. P. 11(c)(2).

Finally, while it is a close call, the Court hesitates to find that no reasonably competent attorney could consider Plaintiff's claims meritorious. Plaintiff's counsel did make some attempt, albeit unsuccessful, to draw distinctions between the instant case and *Vigil*, and there was at least some basis for him to conclude that the inquiry is a fact-intensive one. Notably, the *Vigil* court explained that the plaintiff's spouse's rejection of UM coverage was valid "under the particular facts of [that] case." *Vigil*, 950 P.2d at 298.

In sum, Defendant's failure to demonstrate the appropriateness of awarding sanctions under the Declaratory Judgment Act, its failure to comply with the technical requirements of Rule 11, and Plaintiff's counsel's identification of certain factual differences in *Vigil*, though in the Court's view ultimately immaterial to the merits of Plaintiff's claims, lead the Court to deny Defendant's request for sanctions.

Wherefore,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings (*Doc. 3*) is granted in part, and Plaintiff's claims are dismissed with prejudice. A final order pursuant to Rule 58 of the Federal Rules of Civil Procedure will be entered dismissing this action in its entirety with prejudice.

**IT IS FURTHER ORDERED** that both Defendant's and Plaintiff's requests for sanctions are denied.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent